1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHERRILYN DOMINIQUE,

        Plaintiff,

     v.

HOLLAND AMERICA LINE, N.V., *et al.*,

        Defendants.

Case No.  C12-78RSL

ORDER GRANTING DEFENDANTS'
MOTION IN LIMINE, GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTIONS IN
LIMINE AS MOOT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. # 19) filed

by Defendants Holland America Line N.V. and HAL Antilles N.V. (collectively "HAL" or

"Defendants"), HAL's <u>Daubert</u> motion (Dkt. # 16), and Plaintiff Sherrilyn Dominique's two

<u>Daubert</u> motions (Dkt. # 20, 25).  Having reviewed the memoranda, declarations, and exhibits

submitted by the parties, the Court finds as follows:

## II. BACKGROUND

Plaintiff brings a negligence claim against HAL for the atrial fibrillation she experienced

shortly after taking a cruise operated by HAL.  Dkt. # 1 ¶¶ 4.1-4.6.  The final night of the cruise,

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 1

Plaintiff and her friend were returning to their cabin after dinner when they smelled fumes in the hallway. Dkt. # 18-1 at 5. Plaintiff called the front desk and a cruise receptionist informed her that it was likely paint she was smelling. Earlier that day crewmembers painted a service room on a lower deck and as a result, the smell of paint was present in a few cabins. Dkt. # 17-2 at 2. The receptionist told Plaintiff that the smell should dissipate soon. Dkt. # 18-1 at 20. After a few minutes of packing, Plaintiff left the cabin to attend a few musical performances.

When she returned to her room around 11:00 p.m. she could still smell the fumes. Id. at 27. A crewmember fumigated her cabin and Plaintiff fell asleep shortly thereafter. Id. at 30. A few hours later Plaintiff woke up feeling nauseous. She spent the rest of the night in a different cabin. Plaintiff was still feeling nauseous when she woke up in the morning so she went to the infirmary. Id. at 17; Dkt. # 17-1 at 4. She declined an offer to see the doctor, but requested imodium for her stomach. Id.

Later that day, while waiting for her flight home at the San Diego Airport, Plaintiff had a rapid heartbeat and felt nauseous. Dkt. # 18-1 at 18-19. She was admitted to a hospital in San Diego where she was diagnosed with atrial fibrillation, a type of cardiac arrhythmia. Id. at 20. She was discharged from the hospital the following day and flew home to Santa Cruz, California.

## III. ANALYSIS

**A.  Choice of Law and Plaintiff's Burden to Establish Causation**

As a preliminary matter, the parties dispute whether maritime law or Washington State law provides the requisite standard of care for Plaintiff's negligence claim. Plaintiff argues that Washington's higher standard of care, not federal maritime law, applies because she filed her complaint in this Court based on diversity jurisdiction. Dkt. # 28 at 3-4. While Plaintiff is correct that usually this Court would apply the law of the forum state in cases founded on diversity jurisdiction, if the case sounds in admiralty the Court must apply federal admiralty law. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131 (3rd Cir. 2002).

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 2

1   "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §

2   1333(1) over a tort claim must satisfy conditions both of location and of connection with

3   maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527,

4   534 (1995). In determining whether the location element is satisfied, courts consider "whether

5   the tort occurred on navigable water or whether injury suffered on land was caused by a vessel

6   on navigable water." Id. The connection element hinges on "whether the incident has a

7   potentially disruptive impact on maritime commerce" and "whether the general character of the

8   activity giving rise to the incident shows a substantial relationship to traditional maritime

9   activity." Wallis v. Princess Cruises, Inc., 306 F.3d 827, 840 (9th Cir. 2002) (internal quotation

10  marks omitted).

11        Here, it is undisputed that the alleged tort occurred on navigable water.  Plaintiff

12  contends, however, that the incident had no potential to disrupt maritime commerce and

13  therefore maritime law does not apply.  Dkt. # 28 at 4.  Plaintiff's focus on the precise

14  circumstances of the alleged harm is inconsistent with the broad view taken by the Supreme

15  Court in Sisson v. Ruby, 497 U.S. 358 (1990).  In Sisson, the Supreme Court explained that the

16  jurisdictional inquiry does not depend on the effects of the particular incident or the particular

17  facts of the incident.  497 U.S. at 363.  Instead, "a court must assess the general features of the

18  type of incident involved to determine whether such an incident is likely to disrupt commercial

19  activity." Id. Following this approach, the Ninth Circuit has characterized a cruise ship

20  crewmember's allegedly tortious statements to a passenger as a cruise ship's treatment of

21  passengers generally.  Wallis, 306 F.3d 840 (9th Cir. 2002).  Thus, the Ninth Circuit found that

22  "[a] cruise line's treatment of paying passengers clearly has potential to disrupt commercial

23  activity, and certainly has a substantial relationship to traditional maritime activity." Id. at 840-

24  41.  Like the conduct at issue in Wallis, the relevant activity underlying Plaintiff's claim is the

25  cruise ship's treatment of paying passengers.  The connection element is therefore satisfied.  The

26

27  ORDER GRANTING DEFENDANTS' MOTION
    IN LIMINE, GRANTING MOTION FOR
    SUMMARY JUDGMENT AND DENYING
28  PLAINTIFF'S MOTIONS IN LIMINE - 3

proper standard of care is that under general maritime law.

To succeed on a claim of negligence under general maritime law, Plaintiff must show by a preponderance of the evidence that (1) HAL owed her a duty of care; (2) HAL breached that duty; (3) Plaintiff was injured; and (4) HAL's breach was the proximate cause of the injuries. Samuels v. Holland American Line-USA Inc., 656 F.3d 948, 953 (9th Cir. 2011).

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012).  The parties agree that in a toxic tort case, a plaintiff must show both that she was exposed to chemicals that could have caused the injuries of which she complains (general causation) and her exposure did in fact actually cause those injuries (specific causation).  Dkt. #16 at 7; Dkt. # 38 at 1; see also Golden v. CH2M Hill Hanford Group, Inc., 528 F.3d 681, 683 (9th Cir. 2008).  Thus, to survive the underlying motion for summary judgment Plaintiff must show that exposure to the chemicals in the paint is capable of causing atrial fibrillation and exposure to the paint on the cruise did in fact cause her atrial fibrillation.

**B.  HAL's Motion in Limine to Exclude Plaintiff's Experts Dr. Gary Richwald and Dr. Asa Bradman**

### 1.  Daubert Legal Standard

Pursuant to Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 4

1   from reaching the jury.  The gate-keeping function applies to all expert testimony, not just

2   testimony based on science.  Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).  To be

3   admissible, expert testimony must be both reliable and helpful.  The reliability of expert

4   testimony is judged not on the substance of the opinions offered, but on the methods employed

5   in developing those opinions.  Daubert, 509 U.S. at 594-95.  In general, the expert's opinion

6   must be based on principles, techniques, or theories that are generally accepted in his or her

7   profession and must reflect something more than subjective belief and/or unsupported

8   speculation.  Id. at 590.  The testimony must also be "helpful," such that a valid connection

9   between the opinion offered and the issues of the case exists.  Id. at 591-92.

10          **2. Dr. Gary Richwald's Opinions**

11          Defendants seek to exclude Dr. Richwald's testimony and report because Dr. Richwald

12   fails to address general causation, specific causation and Plaintiff's dose response.  Dkt. # 16 at

13   13.  More specifically, Defendants contend that Dr. Richwald's failure to explain the exposure

14   level at which the chemical solvents in the paint become toxic and his failure to identify the

15   amount of chemical solvents to which Plaintiff was actually exposed make his opinions

16   unreliable.  Id at 13.

17          "While precise information concerning the exposure necessary to cause specific harm is

18   beneficial, such evidence is not always available, or necessary, to demonstrate that a substance is

19   toxic. . . and need not invariably provide the basis for an expert's opinion on causation."

20   Clausen v. M/V Carissa, 339 F.3d 1049, 1059 (9th Cir. 2003) (internal quotation marks and

21   alterations omitted).  Although Dr. Richwald does not identify the level of exposure at which the

22   solvents become toxic, he does rely on learned treatises to support his general finding that

23   exposure to the solvents in the paint may cause nausea and dizziness, as well as an irregular

24   heart rhythm. Dkt. # 18-3 at 10; Dkt. # 28-1 at 7, 17.  This use of objective sources

25   demonstrates the scientific validity of his opinion regarding general causation.  Clausen, 339

26

27   ORDER GRANTING DEFENDANTS' MOTION
     IN LIMINE, GRANTING MOTION FOR
     SUMMARY JUDGMENT AND DENYING
28   PLAINTIFF'S MOTIONS IN LIMINE - 5

F.3d at 1056 ("Where peer review and publication are absent, the experts must explain precisely
how they went about reaching their conclusions and point to some objective source - a learned
treatise, the policy statement of a professional association, a published article in a reputable
scientific journal or the like - to show that they have followed the scientific evidence method, as
it is practiced by (at least) a recognized minority of scientists in their field.").

    The Court however, is not persuaded that Dr. Richwald's opinion regarding specific
causation meets Daubert's reliability standard.  Plaintiff contends that Dr. Richwald performed
differential diagnosis to reach his conclusion that exposure to the chemical solvents in the paint
did in fact cause her injuries.  Dkt. # 38 at 3.  "Differential diagnosis is the determination of
which of two or more diseases with similar symptoms is the one from which the patient is
suffering, by a systematic comparison and contrasting of the clinical findings." Clausen, 339
F.3d at 1057 (internal quotations omitted).  This method has been accepted under Daubert where
it is reliable.  "A reliable differential diagnosis. . . generally is accomplished by determining the
possible causes for the patient's symptoms and then eliminating each of these potential causes
until reaching one that cannot be ruled out or determining which of those that cannot be
excluded is the most likely." Id.  The first step is creating a comprehensive list of all possible
causes of the person's symptoms.  Id.  After the expert has ruled in all of the potential causes, the
expert begins a process of elimination based on continued review of the evidence.  Ninth Circuit
law requires an expert to provide reasons for rejecting possible causes using scientific methods.
Id. at 1058.  "[T]he elimination of those hypotheses must be founded on more than subjective
beliefs or unsupported speculation." Id. (internal quotation marks omitted).

    In Clausen, a case cited by both parties, the Ninth Circuit was tasked with determining the
admissibility of expert testimony on the issue of causation.  Id. at 1051.  Plaintiffs, the owners of
an oyster company, sought to introduce expert testimony supporting their view that defendants'
oil spill caused the death of plaintiffs' oysters.  Id. at 1052-53.  The court upheld the trial court's

finding that the expert's differential diagnosis was reliable because it was "grounded in the methods and procedures of science." Id. at 1159-61. The Court emphasized that the expert's decisions were based on a number of factors, including the results of histopathological examinations conducted in the lab, a detailed history of the oyster site, government reports, the results of tests conducted by the government, and temporal and geographic proximity. Id. at 1059. The Court concluded that there was ample evidence that the expert relied on "a variety of objective, verifiable evidence." Id. at 1060-61 (internal quotation marks omitted).

In contrast to plaintiff's expert in Clausen, Dr. Richwald did not rely on any independent research or specific studies to support his conclusions that Plaintiff was exposed to toxic amounts of chemical solvents and this exposure in fact caused her atrial fibrillation. There is no suggestion that he relied on any data particular to Plaintiff. His report also fails to show whether or how he used differential diagnosis to reach his ultimate conclusions. Contrary to Plaintiff's argument, Dr. Richwald does not actually "consider" alternative causes of Plaintiff's atrial fibrillation. He dismisses other relevant factors in cursory fashion while affording great weight to the similarities between Plaintiff's reported symptoms and the list of potential risks of overexposure to chemical solvents. Dkt. # 18-3 at 10. He does not offer any specifics to support the leap from general to specific causation. The Court, therefore, finds Dr. Richwald's differential diagnosis lacks sufficient substantive analysis to be considered reliable under Daubert. See Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 840 (9th Cir. 2011).

Dr. Richwald's report also contains several other unsupported conclusions. For example, he explains that "you can expect that some individuals will begin to have cardiac arrhythmia at lower exposures and others will require higher exposures." Dkt. # 18-3 at 10. At no point, however, does Dr. Richwald attempt to determine Plaintiff's level of exposure or her particular tolerance for exposure. Similarly, Dr. Richwald relies on the potential lasting effect of solvents in the bloodstream to explain why Plaintiff's arrhythmia occurred several hours after she smelled

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 7

the fumes. Id. However, he presents no evidence or data suggesting that the solvents were ever actually present in Plaintiff's blood.

Furthermore, Dr. Richwald relies on unspecified animal studies to support his theory that Plaintiff's exposure to the solvents increased her sensitivity to specific neurotransmitters associated with arrhythmia. Dkt. # 18-3 at 10. An expert opinion that relies on animal studies to show causation may be admissible where the expert explains how and why the results of those studies apply to humans. Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997). Dr. Richwald fails to provide any details about the animal studies, leaving an analytical gap between the results of the studies and Plaintiff's particular injuries.

Finally, it is unclear how Dr. Richwald reached his conclusion that Plaintiff's "report of post-exposure health effects of fatigability, irritability, difficulty with concentration and loss of interest in daily events, is consistent with what is called 'organic affective syndrome.'" Dkt. # 18-3 at 10. He does not appear to consider any other alternative explanations for these particular complaints, nor does he rely on any objective evidence to support his conclusion. Absent evidence to support these findings, "there is simply too great an analytic gap between the data and the opinion proffered." Joiner, 522 U.S. at 146. His unsupported conclusions would not assist the fact finder in deciding whether the solvents in the paint actually caused Plaintiff's injuries. Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007). Dr. Richwald's opinion testimony is therefore inadmissible.

In their reply, Defendants ask the Court to strike the statements in Dr. Richwald's declaration about naphtha, one of the chemical solvents in the paint used by HAL, because the statements are outside the scope of his report and were not disclosed before the expert report deadline. Dkt. # 40 at 8 n.12. As Defendants point out, id., beyond noting that the paint contained naphtha, Dr. Richwald's report does not provide any data or opinions about naphtha, see Dkt. # 18-3 at 7-12. The Court, however, need not determine whether Dr. Richwald's

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 8

statements regarding naphtha are outside the scope of his report because, like his original

opinions, the Court concludes that his statement that naphtha caused Plaintiff's arrhythmia is

unreliable for the reasons set forth above and therefore, inadmissible under <u>Daubert</u> and Federal

Rule of Evidence 702.

### 3. Dr. Asa Bradman's Opinions

HAL seeks to exclude the proffered testimony of Dr. Bradman to the extent that it

presents opinions on the issue of causation.  Dkt. # 16 at 10-13.  Because Plaintiff and

Defendants agree that Dr. Bradman's report does not offer an opinion regarding causation, Dkt.

# 38 at 14; Dkt. # 40 at 9 n. 14, the Court GRANTS HAL's motion to exclude Dr. Bradman's

opinions regarding causation.

### C. HAL's Motion for Summary Judgment

### 1. Legal Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to

the nonmoving party, the record shows that "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

seeking summary dismissal of the case "bears the initial responsibility of informing the district

court of the basis for its motion," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and

identifying those portions of the materials in the record that show the absence of a genuine issue

of fact, Fed. R. Civ. P. 56(c)(1).  Once the moving party has satisfied its burden, it is entitled to

summary judgment if the non-moving party fails to designate "specific facts showing that there

is a genuine issue for trial."  <u>Celotex Corp.</u>, 477 U.S. at 324.  "The mere existence of a scintilla

of evidence in support of the non-moving party's position is not sufficient."  <u>Triton Energy

Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be

granted where the nonmoving party fails to offer evidence from which a reasonable jury could

return a verdict in its favor."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 9

626, 631 (9th Cir. 1987).

**2. Analysis**

The Court has excluded Plaintiff's proposed causation expert witness, Dr. Richwald, and Dr. Bradman's proffered testimony to the extent that it provides opinions on the issue of causation.  In light of these rulings, Plaintiff has failed to provide sufficient admissible evidence to meet the burden of proof on her negligence claim.  Absent evidence of the extent of exposure or specific causation, Plaintiff cannot make out a case of negligence.  See Avila, 633 F.3d at 838-39.

**D.  Plaintiff's Motions in Limine**

The Court's decision dismissing Plaintiff's claims against Defendants renders moot her pending motions in limine.  The Court therefore DENIES Plaintiff's motions as moot.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS HAL's motion in limine to exclude Dr. Richwald and Dr. Bradman (Dkt. # 16), GRANTS HAL's motion for summary judgment (Dkt. # 19), and DENIES Plaintiff's motions limine (Dkt. # 20, 25) as moot.


DATED this 27th day of September, 2013.




*MW S Lasnik*

Robert S. Lasnik
United States District Judge



ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE, GRANTING MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTIONS IN LIMINE - 10